# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROSS DOWNING, | : | |
|     Plaintiff, | : | Case No. 3:05CV328 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| RED LOBSTER, | : | |
|     Defendant. | : | |

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS[1]

**I. INTRODUCTION**

Plaintiff Ross Downing, a resident of Dayton, Ohio, brings this case *pro se* against his employer, Red Lobster.[2] Downing claims that he was denied equal opportunity to employment because he was not allowed to participate in training sessions on three occasions. (Doc. #2, 23). According to Downing, Defendant provided training and required employees to pass a test to continue their employment. Employees given training had an advantage in meeting the testing requirements over employees not given training. (Doc. #4 at 1). Downing also alleges that Defendant discriminated against him by not providing him with training due to his gender, sexual orientation, race, and age. (Doc. #4 at 1-2). He further claims that he was subjected to

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Defendant states that GMRI, Inc. does business as Red Lobster, and that the Complaint improperly names Red Lobster as the Defendant. For docketing purposes, the Defendant's name remains Red Lobster. References to "Defendant" in this Report assumes that the proper party Defendant is GMRI, Inc. See Doc. #10 at 1.

discriminatory harassment because of his sex and in retaliation for complaining about violations of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2, *et seq*. (Doc. #4 at 4). Downing explains in part as follows: "Plaintiff was the only employee not allowed to pick up shifts. Plaintiff was consistently limited to small tables[.] Plaintiff was repeatedly scheduled to take one table and then dismissed. Plaintiff was retaliated against by being assigned additional duties that other servers weren't. Plaintiff was forced to work in duties outside his job description, at a forced wage." (Doc. # 23 at 3).

Following a prior Report and Recommendations, to which Downing objected, this case was remanded for a brief hearing to determine whether, in fact, Downing received notice of Defendant's Motion to Dismiss. (Doc. #19). The undersigned Judicial Officer held a hearing and granted Downing an additional opportunity to file a Memorandum in Opposition to Defendant's Motion to Dismiss. (Doc. #22). Downing has since done so, and this case is therefore before the Court upon Defendant's Motion to Dismiss (Doc. #10), Downing's Memorandum in Opposition (Doc. #23), Defendant's Reply (Doc. #24), and the record as a whole.

## II.     APPLICABLE LAW AND ANALYSIS

Defendant seeks dismissal of this case under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq*. Defendant argues that dismissal is warranted because Downing's Title VII claims are subject to arbitration in light of parties' agreement to arbitrate such claims. Defendant maintains that Title VII claims are generally valid and enforceable under the FAA, as held in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001). Defendant emphasizes that numerous courts, including the U.S. District Court for the Northern District of Ohio, have

examined and upheld the validity of the same arbitration agreement at issue in this case. (Doc. #10 at 12, n.5 (citing in part Exhibit 2, *Ghods v. Darden Restaurants, Inc. and The Olive Garden Italian Restaurant*, Case No. 1:05cv1956 (N.D. Ohio, Oct. 7, 2005)).

The FAA expresses a strong public policy in favor of arbitration agreements by mandating the enforcement of such agreements. *Cooper v. MRM Investment Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. §2. "If the parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances." *Stout v. JD Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

Downing's Memorandum in Opposition (Doc. #23) to Defendant's Motion to Dismiss does not dispute that on several different occasions, Defendant notified Downing about its Dispute Resolution Process ("DRP"). On January 18, 2005, Downing signed an application for employment, thereby acknowledging as follows:

> I UNDERSTAND THAT GMRI, INC. D/B/A RED LOBSTER HAS IN PLACE A DISPUTE RESOLUTION PROCEDURE, AND I FURTHER ACKNOWLEDGE AND AGREE THAT IF I AM OFFERED AND ACCEPT EMPLOYMENT, ANY DISPUTE BETWEEN ME AND GMRI, INC., RELATING TO MY EMPLOYMENT AND/OR MY SEPARATION FROM EMPLOYMENT, SHALL BE SUBMITTED WITHIN ONE (1) YEAR OF THE DAY WHICH I LEARNED OF THE EVENT AND SHALL BE RESOLVED PURSUANT TO THE TERMS AND CONDITIONS OF THE DISPUTE RESOLUTION PROCEDURE.

(Doc. #10, Exhibit 1(E)). After Defendant hired Downing, he received a copy of the employee handbook and a DRP pamphlet. His January 20, 2005 signature appears on a document in which he acknowledged:

>I have received information entitled, 'Can We Talk?' Dispute Resolution Procedure at Red Lobster (DRP), which contains a description of DRP. I have read this information and understand and agree to the terms and conditions of DRP and understand that Red Lobster is equally bound. I agree, as a condition of my employment at Red Lobster, to submit any eligible disputes I may have to the company's DRP and to abide by the provisions outlined in ... [the] Dispute Resolution Procedure. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined in the DRP.

(Doc. #10, Exhibit 1(G)).

The DRP, which Downing received and agreed to, *see id.*, contains the following mandatory arbitration provision:

>The DRP is the sole means for resolving covered employment-related disputes, instead of court actions. Disputes eligible for DRP must be resolved only through DRP, with the final step binding arbitration heard by an arbitrator. This means DRP-eligible disputes will NOT BE RESOLVED BY A JUDGE OR JURY. Neither the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the employee waive all rights to bring a civil court action for these disputes.

(Doc. #10, Exh. H at 4)(capitalization in original). The DRP specifically includes as an example of claims subject to arbitration as those arising under the Civil Rights Act of 1964, *i.e.*, Title VII. *Id*.

Downing's Memorandum in Opposition focuses on the merits of his discrimination claims rather than specifically challenging Defendant's reliance on the above mandatory arbitration provision. *See* Doc. #23 at 1-6. Consequently, the evidence of record – particularly Downing's January 20, 2005 signature – establishes that he agreed to the mandatory arbitration provision in the DRP. "One who signs a contract is presumed to know its contents, and ... if he has had an opportunity to read the contract which he signs he is bound by its provisions." *Stout*, 228 F.3d at 715 (citation omitted).

4

Given Downing's agreement to arbitrate, a two-part inquiry resolves whether he must proceed to arbitrate his present Title VII claim pursuant to the FAA: First, the Court determines whether his claims are generally subject to compulsory arbitration; and if so, the Court determines whether the arbitration agreement is valid and enforceable. *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 665 (6th Cir. 2003). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. at 1, 24-25 (1983). The party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Morrison*, 317 F.3d at 659.

Downing's Title VII claims of discrimination, harassment, and retaliation are subject to compulsory arbitration under the FAA. *See Morrison*, 317 F.3d at 665. It must therefore be determined whether the arbitration agreement is valid and enforceable under Ohio contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Morrison*, 317 F.3d at 666.

The elements of a valid contract in Ohio include mutual assent and consideration. *See Kostelnik v. Helper*, 96 Ohio St.3d 1, 3 (2002). Both Defendant and Downing manifested their assent to the mandatory arbitration provision: Defendant by its agreement to the terms of the DRP, including its requirement that Defendant arbitrate DRP-eligible claims, *see* Doc. #10, Exhibit 1(H) at 4; Downing by his January 20, 2005 signature, which acknowledged his agreement to the terms of the DRP, including its mandatory arbitration provision. *See* Doc. #10, Exhibits 1(G).

The parties' agreement to the mandatory arbitration provision in the DRP was supported by consideration consisting of their mutual promises to be bound by this provision. *See Cooper*

5

*v. MRI Investment Co.*, 367 F.3d 493, 505 (6th Cir. 2004)(Tenn. law). "[W]here an employer informs its employees that from this point forward, certain disputes must be directed to arbitration, while the employees are not obligated to continue in their employment, as long as they do, they are obligated to comply with the terms set by the employer, and the fact that they no longer have a remedy in a court of law is of little consequence. The consideration is given by the employer when the employee accepts the offer of continued employment." *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 864 (S.D. Ohio 2003)(Rice, C.J.). Defendant has continuously employed Downing since hiring him in January 2005. *See* Doc. #10 at 11. Consideration therefore supports the parties' mandatory arbitration agreement in the DRP. *See Raasch*, 254 F.Supp.2d at 864-65.

 Lastly, both the broad language of the mandatory arbitration provision in the DRP and its specific inclusion of claims under the Civil Rights Act of 1964 subjects Downing's Title VII claims to mandatory arbitration. *See* Doc. #10, Exhibit 1(H) at 4. Downing acknowledged as much by his signature of January 20, 2005. *See* Doc. #10, Exhibit 1(G).

 Accordingly, the present record establishes that the mandatory arbitration provision in the DRP is valid and enforceable under Ohio law. Although Downing's Memorandum in Opposition reveals his sincerely held belief in the merits of his Title VII claims, *see* Doc. #23 at 1-6, his Memorandum in Opposition does not provide a basis for avoiding the mandatory arbitration provision in the DRP. As a result, Downing must arbitrate his Title VII claims.

 Because the results of arbitration are binding on both parties, *see* Doc. #10, Exh. 1(H) at 4, this case should be dismissed. *See Raasch*, 254 F.Supp.2d at 868. Dismissal, however, should be without prejudice to the parties' rights under the DRP and the FAA to compel arbitration

and/or to enforce an arbitration award.  (Doc. #10, Exh. 1(H) at 11).

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion to Dismiss (Doc. #10) be GRANTED;

2. Plaintiff's Amended Complaint (Doc. #4) be DISMISSED without prejudice; and

3. The case be terminated on the docket of this Court.


February 21, 2007

                                                    s/ Sharon L. Ovington
                                                     Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).